UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEYHMUS AYDEMIR,

                            *Petitioner*,

        v.

MERRICK GARLAND, U.S. Attorney General,
ALEJANDRO MAYORKAS, Secretary, U.S.
Department of Homeland Security,
UR MENDOZA JADDOU, Director, U.S.
Citizenship and Immigration Services,
CHRISTOPHER WRAY, Director, Federal
Bureau of Investigation,

                            *Respondents*.

No. 22-cv-100 (PAC)

**OPINION & ORDER**

---

       Petitioner Seyhmus Aydemir has a pending application for a green card. He filed that application with United States Citizenship and Immigration Services ("USCIS") in April 2020. After waiting about 18 months, Aydemir commenced this mandamus action against the Director of USCIS and three other government respondents (collectively, the "Respondents"), seeking to compel USCIS to complete his application. Aydemir's Petition contends that USCIS has not adjudicated his application within a reasonable amount of time.

       The Respondents have moved to dismiss the Petition for lack of subject-matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Respondents' motion to dismiss is **GRANTED**.

## BACKGROUND

       Aydemir is a citizen of Turkey who resides in New York. *See* Petition ¶ 2, ECF No. 4. He was granted asylum in the United States in 2019. *Id.* ¶ 8. He subsequently filed a Form I-485 application for adjustment of permanent resident status—commonly known as a green card—in

1

April 2020. *Id.* ¶ 1. His application has been pending for approximately 28 months. During that time, he provided USCIS with fingerprint and biometric data. *Id.* ¶ 11. He also sought assistance from one of his elected representatives to expedite his application. *See id.* ¶ 1. USCIS denied Aydemir's request to expedite his case. *See id.*

Aydemir subsequently filed a Petition in this Court against the Director of USCIS, the Attorney General of the United States, and the Secretary of the United States Department of Homeland Security—who Aydemir claims are together "responsible for adjudicating visa petitions, implementing the Immigration and Nationality Act . . . and ensuring compliance with all applicable federal laws, including the [Administrative Procedure Act]." *Id.* ¶ 3. He also names a fourth respondent, the Director of the Federal Bureau of Investigation, who bears responsibility "for running all . . . visa applicants through its various security and background check programs," because he claims the delay in his application "may be attributed to a failure to process a security check." *Id.*

Aydemir's Petition contends the delay in his green card application has been unreasonable, and that USCIS must be compelled to expedite his application. He argues the delay has prejudiced him because he is a medical professional, and it is difficult to seek employment in his field without a green card. *Id.* ¶¶ 1, 12. The Respondents have moved to dismiss.

## DISCUSSION

### I. Legal Standard for a Motion to Dismiss

#### A. Lack of Subject-Matter Jurisdiction under Rule 12(b)(1)

On a motion to dismiss pursuant to Rule 12(b)(1), the party seeking to invoke the Court's jurisdiction bears the burden of proving that subject-matter jurisdiction exists. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). "A case is properly dismissed for

lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The petitioner must prove subject matter jurisdiction exists by a "preponderance of the evidence" standard. *Id.*; *see also Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

### B. Failure to State a Claim under Rule 12(b)(6)

To defeat a motion to dismiss under Rule 12(b)(6), a petition "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the [petitioner] pleads factual content that allows the court to draw the reasonable inference that the [respondent] is liable for the misconduct alleged." *Id.* The Court draws all inferences in favor of the petitioner as the nonmoving party. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019). The Court may consider facts alleged in the petition as well as documents that it attaches or incorporates by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

## II. APA Claim

Aydemir first claims the Administrative Procedure Act ("APA") requires this Court to compel USCIS to expedite his green card application. This claim fails.

### A. Subject-Matter Jurisdiction over the APA Claim

The Court must initially confirm it has subject-matter jurisdiction before addressing the merits of Aydemir's Petition. *See Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 187 (2d Cir. 2022).[1] The Court confirms it has jurisdiction over Aydemir's APA claim.

---

[1] The Respondents have moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, but do not specifically argue that the Court lacks jurisdiction over Aydemir's APA claim. Nevertheless, the Court has an independent duty to assess subject-matter jurisdiction over each claim. *See Bhaktibhai-Patel*, 32 F.4th at 187.

It is well-settled that "[t]he APA in conjunction with the federal question statute, 28 U.S.C. § 1331, may provide a jurisdictional basis" to hear a claim that an agency adjudication has been unduly delayed. *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 543 (S.D.N.Y. 2008) (citation omitted). Aydemir alleges USCIS has violated two APA provisions by delaying adjudication of his green card, *see* 5 U.S.C. §§ 555(b) and 706(1), and he has therefore established a presumptive basis for jurisdiction.

Nonetheless, a third statute—the Immigration and Nationality Act ("INA")—looms over the jurisdictional question. *See Shabaj v. Holder*, 718 F.3d 48, 52 (2d Cir. 2013) (observing that regardless of the federal question statute, "the judicial review provisions of the APA do not apply 'to the extent that . . . statutes preclude judicial review'") (quoting 5 U.S.C. § 701(a)(1)). The thorn here comes from INA Section 1252, which provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief" concerning an application—like Aydemir's—for adjustment of legal permanent residence; nor shall courts have jurisdiction to review "any other decision or action" of the Attorney General or the Secretary of the Department of Homeland Security for which they have sole discretion under the INA. 8 U.S.C. § 1252(a)(2)(B). Some courts have held that INA Section 1252 has "stripped [them] of jurisdiction to review the status of unadjudicated adjustment applications." *Geneme v. Holder*, 935 F. Supp. 2d 184, 190 (D.D.C. 2013) (collecting cases). Yet "[m]any other courts" disagree and have held that courts may hear lawsuits to speed up the green card adjudication process. *See id.* at 191.

The Court joins those district courts who have confirmed subject-matter jurisdiction here. Specifically, the Court endorses Judge Schofield's reasoning from *Boussana v. Johnson*, No. 14 Civ. 3757, 2015 WL 3651329, at *5–7 (S.D.N.Y. June 11, 2015). As Judge Schofield explained, the Second Circuit has made clear that INA Section 1252 precludes review "only of 'a judgment

4

denying a request for adjustment of status.'" *Id.* at \*6 (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 85 (2d Cir. 2008)). By contrast, nothing in the INA "expressly gives the government the power *not* to adjudicate an adjustment of status application," which is what Aydemir seeks to compel USCIS to do here. *Nigmadzhanov*, 550 F. Supp. 2d at 547 (emphasis added). In other words, the Court would lack jurisdiction, under the INA, to order USCIS to reach a *particular* judgment regarding Aydemir's green card application. But the Court does have jurisdiction to order USCIS to fulfill its nondiscretionary duty to reach a judgment in the first place.

This Court has suggested it would endorse this jurisdictional conclusion before. In *Kilani-Hewitt v. Bukszpan*, this Court—adopting a report and recommendation by Magistrate Judge Maas—held that it lacked jurisdiction over a case seeking to compel the Attorney General's "*discretion* to defer indefinitely the adjudication of removal proceedings that have been commenced." 130 F. Supp. 3d 858, 864 (S.D.N.Y. 2015) (emphasis added). In so doing, Judge Maas contrasted Judge Schofield's decision in *Boussana*—again, a delayed-green-card case—as an example of a viable APA claim because processing that application is not a "discretionary decision[] and thus must be made within a reasonable time." *Id.* In sum, INA Section 1252 does not strip this Court of jurisdiction.

### B. Legal Standard for APA Claims of Unreasonable Delay

With jurisdiction established, the Court turns to the merits of Aydemir's APA claim. The APA allows federal courts to review agency actions that are either not completed "within a reasonable time" or are "unreasonably delayed." *See* 5 U.S.C. §§ 555(b), 706(1). In determining reasonableness, "[courts] look to the source of delay—e.g., the complexity of the [agency adjudication] as well as the extent to which the [respondents] participated in delaying the proceeding." *Reddy v. CFTC*, 191 F.3d 109, 120 (2d Cir. 1999). Courts in this District also apply

the six factors set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*").[2]  *See NRDC v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013) (citing *TRAC* as "setting forth test for determining if agency action is unreasonably delayed"). Those *TRAC* factors are: (1) the time agencies take to make decisions, which is governed by "a rule of reason"; (2) whether Congress has provided a timetable that informs this rule of reason; (3) whether "human health and welfare are at stake," in which case delays are "less tolerable"; (4) whether expediting the delayed action will impact agency activities of a higher or competing priority; (5) the interests prejudiced by delay; and (6) whether there has been agency "impropriety" contributing to the delay.  *See, e.g.*, *Saharia v. USCIS*, No. 21 Civ. 3688, 2022 WL 3141958, at *4 (S.D.N.Y. Aug. 5, 2022); *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 51 (S.D.N.Y. 2020).

### C. The Petition Fails to State an APA Claim

The amount of time that Aydemir's green card application has been pending—currently, 28 months—is not unreasonable as a matter of law.  At the outset, the Court notes Aydemir's application remains within USCIS's average processing times.  According to its website, USCIS currently completes 80% of Form I-485s from asylum grantees within 40.5 months.  *See* USCIS, *Check Case Processing Times*, available at https://egov.uscis.gov/processing-times/ (last accessed August 15, 2022) (providing identical statistic for both the Texas and Nebraska Service Centers).[3]

---

[2] The *TRAC* factors are "fact-sensitive," meaning they are "usually inappropriate" to apply at the motion-to-dismiss stage. *See Saharia v. USCIS*, No. 21 Civ. 3688, 2022 WL 3141958, at *4 (S.D.N.Y. Aug. 5, 2022).  Nonetheless, both parties' briefs relied extensively on the factors, and courts often apply them at this stage. *See, e.g.*, *id.*  This Court will do so as well, while remaining careful to accept the facts of the Petition as true and to draw all inferences in Aydemir's favor.

[3] The Court takes judicial notice of these processing times.  "[A] court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination . . . ." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (internal quotations omitted).

Average processing times, of course, do not indicate whether those times are themselves reasonable. *Cf. Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 454 (6th Cir. 2022). But critically, courts generally conclude that a green card delay of less than four years is reasonable on its face; by contrast, delays exceeding six years are often found unreasonable. *See Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071–72 (N.D. Cal. 2014) (collecting cases); *compare Fangfang Xu*, 434 F. Supp. 3d at 55 (three-year delay in adjudicating an asylum application was not unreasonable); *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding a "delay of almost five years" was not unreasonable); *Gong v. Duke*, 282 F. Supp. 3d 566, 568 (E.D.N.Y. 2017) ("[T]he mere delay of less than four years is an inadequate ground to grant either mandamus or APA relief."); *with Boussana*, 2015 WL 3651329, at *8 (green card delay of eight years—approximately 96 months—was unreasonable). Aydemir's pending application is still several years away from approaching this zone of unreasonableness, and he has cited no cases demanding a shorter timeline.

The *TRAC* factors likewise support the conclusion that Aydemir's delay has not been unreasonable as a matter of law.

      i. <u>*TRAC* Factor 1: Rule of Reason</u>

Under the first factor—which the D.C. Circuit has characterized as the "most important," *In re Core Communs., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)—the law and alleged facts favor dismissal. USCIS has a rule of reason governing green card applications: a "first in, first out" rule. The agency's website states that it "generally" processes applications "in the order [it] receive[s] them." *See* USCIS, *Check Case Processing Times*, supra. "Courts widely recognize that a first-in, first-out method counts as a rule of reason" governing an agency's immigration adjudication. *Aljabari v. Mayorkas*, No. 21-CV-6645, 2022 WL 2073047, at *3 (N.D. Ill. June 9, 2022).

Although Aydemir contends there is no indication that USCIS has followed normal "first in, first out" procedures in his own case, none of his factual allegations suggest the agency has treated him differently than any other applicant. He claims his application has been processed "in an unusual manner," Petition ¶ 1, and cites a regulation that allows USCIS to withhold adjudication pending an investigation of an applicant when "the disclosure of information . . . in connection with the adjudication . . . would prejudice the ongoing investigation." *Id.* ¶¶ 17–18 (citing 8 C.F.R. § 103.2(b)(18)). This claim is wholly conclusory, as Aydemir does not allege he is the subject of any such investigation or explain why USCIS would apply this regulation to his case. *See Beshir v. Holder*, 10 F. Supp. 3d 165, 177 (D.D.C. 2014) (holding 8 C.F.R. § 103.2(b)(18) does not apply to general processing delays where neither party "alleged that there is an ongoing criminal investigation or that confidential informants, witnesses, or undercover agents are in any way involved"). Aydemir similarly speculates that "the delay, in this case, may be attributed to a failure to process a security check," Petition ¶ 4, but this claim is likewise devoid of any factual support.

Thus, Aydemir's theory that USCIS has delayed his application for an "unusual" reason is wholly speculative and conclusory, and the Court is not required to credit that theory at the pleading stage. *See Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).[4] Thus, "[w]ithout any [adequately] alleged irregularities," the Court concludes that "USCIS is managing a mountain of applications in a manner that follows a rule of reason" under the first *TRAC* factor. *Aljabari*, 2022 WL 2073047, at *3 ("There is fairness in requiring everyone to wait their turn.").

---

[4] The Court notes Aydemir's Petition will be dismissed without prejudice. If he produces fact-specific allegations that render his claim about the "failure to process a security check" at least plausible—or if the length of USCIS's administrative delay becomes unreasonable—Aydemir may file another petition.

Indeed, Aydemir does "not ask[] to be put ahead in line of others," but seeks a "normal processing of his application." Pet'r's Opp'n 11, ECF No. 19. Put another way, he challenges the average processing time for *all applicants*, not just himself. But ordering USCIS to speed up universal processing times would "intrude into a quintessentially administrative function, and in the process reconfigure the agency's priorities to advance" many thousands[5] of green card applicants "at the expense of applicants who seek other benefits from the agency, such as every other type of immigrant- and non-immigrant visa, asylum, and other remedies." *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 261 (E.D.N.Y. 2021). That reconfiguration would be "something that this Court is institutionally ill-equipped to do." *Id.* (internal quotation omitted).

    ii. *TRAC* Factor 2: Timetable

The second *TRAC* factor—whether Congress has provided a timetable to govern the processing of green card applications—weighs slightly in Aydemir's favor. Regarding the appropriate timetable for USCIS adjudications, Congress has written the following: "[i]t is the sense of Congress that the processing of an immigration benefit application *should* be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b) (emphasis added). But as many courts have concluded, this precatory statement does not set a deadline by which USCIS *must* adjudicate an application. *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021); *Li v. Chertoff*, No. 07-CV-3836, 2007 WL 4326784, at *5 (E.D.N.Y. Dec. 7, 2007); *see also Yang v. Cal. Dept. of Social Services*, 183 F.3d 953, 961 (9th Cir. 1999) (describing a similar "sense of Congress provision" as "non-binding, legislative dicta"). This Congressional

---

[5] USCIS reported more than 87,000 pending green card applications from asylum grantees at the end of 2021. *See* USCIS, *Number of Servicewide Forms by Quarter, Form Processing, and Processing Time, Fiscal Year 2021, Quarter 4*, available at https://www.uscis.gov/sites/default/files/document/data/Quarterly_All_Forms_FY2021Q4.pdf (last accessed August 15, 2022).

timeline thus informs the reasonableness analysis, but it does not transform every immigration benefit application which has been pending for longer than six months into a violation of the APA.

Without a clear statutory timeline, then, courts rely heavily on case law to determine when an agency's adjudicatory timeline becomes unreasonable. *See Chowdhury v. Blinken*, No. 21-CV-1205, 2022 WL 136795, at *3 (D.D.C. Jan. 14, 2022). And as explained above, "[a]s case law indicates, a timeline of approximately two years for immigration adjudication is not unreasonable as a matter of law." *Id.* (internal quotation omitted).

### iii. *TRAC* Factors 3 and 5: Health, Welfare, and Other Interests Prejudiced[6]

The prejudice resulting from delay also weighs slightly in Aydemir's favor but is ultimately insufficient to grant relief. Aydemir alleges that his ability to work is prejudiced because most employers in his medical field require a green card. Even reading the Petition in the light most favorable to Aydemir—and therefore assuming he cannot find work as a medical professional without a green card—that is the "sort of prejudice [that] is inherent in the [] application process; worthy applicants are not entitled to benefits until their applications have been assessed and approved." *Fangfang Xu*, 434 F. Supp. 3d at 54; *see also Saleh*, 367 F. Supp. 2d at 513 ("Plaintiff asserts that he has been greatly inconvenienced in travel for business and personal reasons due to his immigration status, but his request for adjudication disregards entirely the fact that there are 160,000 applications pending aside from his own." (citation omitted)). Aydemir does not allege he cannot find work in *any* position, nor that he is barred from working altogether. After all, he may seek employment authorization while his green card application is pending. *See* 8 C.F.R. § 274a.12(a)(5). Likewise, the stigma of reporting his status as a green card applicant to potential

---

[6] "Courts generally analyze the third and fifth [*TRAC*] factors together." *Boussana*, 2015 WL 3651329, at *9.

employers is a harm that Aydemir shares with every other applicant in his position. In the meantime, Aydemir continues to enjoy asylum status and remains safely in the United States.

Aydemir also asserts that swiftly resuming his role as a medical professional is in the interest of his patients' health and welfare. But giving his profession special weight would have the effect of prioritizing green cards for medical professionals generally. Aydemir has identified no such priority under the current USCIS regime, and the Court will not substitute its priorities for the agency's own. *See Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) ("Congress has given the agencies wide discretion in the area of immigration processing.").

### iv. *TRAC* Factor 4: Consequences of Expediting Agency Action

The fourth factor weighs squarely in favor of dismissal. Because USCIS generally follows a "first in, first out" system for processing green cards, expediting Aydemir's application would consequently disrupt that system. The D.C. Circuit has noted the importance of this fourth factor and has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (citation and brackets omitted); *see also Ying Yu Liu v. Wolf*, No. 19 Civ. 410, 2020 WL 2836426, at *9 (S.D.N.Y. May 30, 2020) (reasoning that "leapfrogging" other applicants would "undermin[e] USCIS's reasons" for implementing a queue system).

Aydemir seeks this exact leapfrog result. His Petition provides no indication that USCIS "officials not working on [Aydemir's] matters were just twiddling their thumbs" rather than adjudicating green cards for other applicants that have waited longer than him. *Xiaobin Xu v. Nielsen*, No. 18-CV-2048, 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) (quoting *Mashpee*, 336 F.3d at 1100–01)). This factor weighs heavily in favor of dismissal.

v.   *TRAC* Factor 6: Agency Impropriety Contributing to Delay

Finally, Aydemir does not allege agency impropriety has contributed to USCIS's delay in adjudicating his green card application.  *See* Pet'r's Opp'n 13.  His Petition alleges USCIS has completed fingerprinting and biometrics screening, implying that the agency has taken some action towards completing his application.  This final factor is therefore neutral.

*     *     *

Overall, the most important *TRAC* factors—that USCIS is processing Aydemir's application under a "first in, first out" regime and that a court order to prioritize his application would disrupt that regime—weigh in favor of dismissing Aydemir's APA claim, while the other factors are neutral or weigh only slightly in his favor.  At bottom, Aydemir's application has not been pending long enough to be unreasonable: his APA claim is premature and must be dismissed.

### III.   Mandamus Claim

Aydemir argues the Mandamus Act likewise requires USCIS to expedite his green card adjudication.  With his APA claim dismissed on the merits, this second claim also fails.

The Mandamus Act provides that federal "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.  To obtain relief under the Mandamus Act, Aydemir must show that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008).  Mandamus jurisdiction is "closely related to the merits of whether a writ of mandamus should issue." *Ocuto Blacktop & Paving Co., Inc. v. Perry*, 942 F. Supp. 783, 786 (N.D.N.Y. 1996).

Without reaching the first two requirements, Aydemir's mandamus claim fails to meet the third requirement and is therefore dismissed. *See Nigmadzhanov*, 550 F. Supp. 2d at 548. As discussed above, the APA provides Aydemir with an "alternative adequate remedy" for his claim that USCIS has not adjudicated his green card within a reasonable time. He simply has not stated an adequate claim to warrant that alternative remedy. Accordingly, mandamus relief is not available. *See Ying Yu Liu*, 2020 WL 2836426, at *10; *Sharkey*, 541 F.3d at 93 (mandamus claim should be dismissed when it duplicates claims brought under the APA).

## CONCLUSION

The Respondents' motion to dismiss is **GRANTED.** The Clerk of Court is respectfully directed to close the motion at ECF Number 17 and close this case.

Dated: New York, New York
September 6, 2022

SO ORDERED

*[signature]*

HONORABLE PAUL A. CROTTY
United States District Judge